IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

―――――――――――――――――――――――――――

| | |
|---|---|
| **RICHARD CICCOTELLI** and **MAUREEN MASON** : | **CIVIL ACTION** |
| **Plaintiffs,** : | |
| : | **NO. 08-1886** |
| vs. : | |
| : | |
| **UNITED STATES OF AMERICA** : | |
| **Defendant.** : | |

―――――――――――――――――――――――――――

## ORDER & MEMORANDUM

### O R D E R

**AND NOW**, this 2nd day of April, 2009, upon consideration of Plaintiffs' Motion for Summary Judgment (Document No. 22, filed December 12, 2008), the United States' Cross-Motion for Summary Judgment and Response to the Plaintiffs' Motion for Summary Judgment (Document No. 23, filed December 20, 2008), Plaintiffs' Reply to Defendant's Motion for Summary Judgment (Document No. 25, filed December 31, 2008), Reply Brief in Support of the United States' Cross-Motion for Summary Judgment (Document No. 26, filed January 9, 2009), and Plaintiffs' Sur-Reply (Document No. 27, filed March 24, 2009), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

 1. Plaintiffs' Motion for Summary Judgment is **GRANTED**;

 2. Defendant's Cross-Motion for Summary Judgment is **DENIED**; and,

 3. **JUDGMENT IS ENTERED** in **FAVOR** of plaintiffs Richard Ciccotelli and Maureen Mason and **AGAINST** defendant, the United States of America, in the amount of $50,000, less any tax due, plus interest from the date plaintiffs' 2000 federal income tax return was filed.

 **IT IS FURTHER ORDERED** that the Clerk shall **MARK** the case as **CLOSED FOR STATISTICAL PURPOSES**.

1

**M E M O R A N D U M**

I. **Introduction**

This case concerns a remittance of $50,000 that plaintiffs, Richard Ciccotelli and Maureen Mason, made to the Internal Revenue Service ("IRS") on January 17, 2001. On September 9, 2005, plaintiffs filed a claim for a refund with the IRS. The IRS denied the claim on the ground that the statute of limitations had run on a request for refund on plaintiffs' tax payment. Plaintiffs commenced the instant lawsuit on September 28, 2007 to contest the IRS's determination and pursue their claim for a refund of $50,000.

Presently before the Court are plaintiffs' Motion for Summary Judgment and the Cross-Motion for Summary Judgment of defendant, the United States of America. For the reasons that follow, plaintiffs' Motion for Summary Judgment is granted and defendant's Cross-Motion for Summary Judgment is denied.

II. **Background**

In 2000, plaintiffs made three separate estimated tax payments to the IRS in the following amounts: $16,000 on April 15th, $17,000 on July 17th, and $15,000 on September 25th. (Barbara A. Brennan Decl. ¶ 8, Dec. 11, 2008, Ex. 102 to Def.'s Mem. Supp. Cross-Mot.) Each of these three payments was accompanied by an IRS Form 1040-ES Payment Voucher ("Payment Voucher"), which provided that it should be "[f]ile[d] only if you are making a payment of estimated tax by check or money order." (1040-ES Payment Voucher Forms for 2000, Ex. 105 to Def.'s Mem. Supp. Cross-Mot ("1040-ES Payment Voucher Forms"); Richard Ciccotelli Dep. 32:12–14, Sept. 18, 2008, Ex. 104 to Def.'s Mem. Supp. Cross-Mot.) In addition, on January 17, 2001, plaintiffs sent a check for $50,000 to the IRS, with a notation of "estimated taxes" written

on it. (Pls.' Mot. 2; Check for $50,000, Ex. 101 to Def.'s Mem. Supp. Cross-Mot.) Although Mr. Ciccotelli completed a Payment Voucher for a fourth quarterly payment in the amount of $50,000, (1040-ES Payment Voucher Forms), he testified that he did not submit a Payment Voucher with this remittance because such a coupon "specifically would have put [the $50,000] towards estimated taxes" and he "didn't think [he] owed taxes for 2000." (Pls.' Mot. 2; Ciccotelli Dep. 32:15–24, 35:20–21, 36:1–4.) Mr. Ciccotelli did not obtain any advice from an accountant before making the $50,000 remittance. (Ciccotelli Dep. 18:21–22.) Rather, he submitted it "[t]o avoid any kind of penalties or interest" in anticipation of being unable to file his taxes on time because of impending "pure personal turmoil . . . ." (Ciccotelli Dep. 16:22–24, 17:9–10, 17:23–18:5, 36:6–11.)

In 2001, plaintiffs filed for two extensions for submission of their 2000 tax return, thereby delaying the filing deadline to October 15, 2001. (Brennan Decl. ¶ 19.) However, due to "severe medical problems" within their family, plaintiffs were unable timely to file their federal tax returns for the years of 2000 to 2004. (Pls.' Mot. 1; Def.'s Mem. Supp. Cross-Mot. 3; Ciccotelli Dep. 39:14–42:17.) They ultimately submitted these returns in 2005, and the IRS processed plaintiffs' tax returns on July 17, 2005. (Brennan Decl. ¶ 16.) The tax due for the 2000 year was $63,227. (Brennan Decl. ¶ 16; Pls.' Mot. 2; Def.'s Mem. Supp. Cross-Mot. 2.) The three payments made in 2000 (totaling $48,000), combined with their employment withholding for 2000 ($21,415), created a total payment of $69,415 for the 2000 calendar year. (Pls.' Mot. 2; Brennan Decl. ¶ 10.) Thus, without the $50,000 at issue in this case, plaintiffs overpaid their 2000 tax liability by $6,188. (Pls.' Mot. 2; Brennan Decl. ¶ 13.)

In their 2000 tax return, plaintiffs' tax return preparer, Marilyn Hatfield, placed the total

of the three estimated tax payments made in 2000 and the $50,000 remittance check submitted on January 17, 2001, $98,000, on Line 59 of the return for "2000 estimated tax payments and amount applied from 1999 return." (Marilyn Hatfield Aff., Dec. 23, 2008, Ex. 22 to Pls.' Reply; 2000 Tax Return, Ex. 102, Attach. 4, to Def.'s Mem. Supp. Cross-Mot.) Ms. Hatfield explained that she "probably erred in placing the $50,000 check there but did not know where else to place a deposit—there is no line on the return specifically for that purpose." (Hatfield Aff.)

According to the IRS, plaintiffs' 2000 tax return constituted an administrative request for refund of the $6,188 that plaintiffs had overpaid and the $50,000 remittance. (Pls.' Mot. 2; Brennan Decl. ¶ 18.) However, the IRS did not give plaintiffs credit for the $56,188. (Pls.' Mot. 2; Brennan Decl. ¶ 20.) Rather, "in the 34th week of 2005"—in "August 2005"—the IRS transferred the $56,188 to an excess collections account to which "funds are transferred if the Service no longer credits those funds to a certain tax year." (Brennan Decl. ¶ 15, n.3.)

On September 9, 2005, plaintiffs filed a claim for a refund, which the IRS rejected by letter dated September 29, 2005 on the ground that the statute of limitations for a request of credit or refund on their tax payment had run. ("We Couldn't Allow Your Claim" Letter, Sept. 29, 2005, Ex. 7 to Pls.' Mot.) On March 30, 2007, the IRS abated the penalties plaintiffs accrued because of their failure to file and failure to pay penalties. (Letter from IRS Appeals Tax Specialist, Mar. 30, 2007, Ex. 6 to Pls.' Mot.) Plaintiffs initiated the instant lawsuit in the Western District of Texas on September 28, 2007. The case was transferred to this District on April 22, 2008.

**IV.    Standard of Review**

A court should grant summary judgment if "the pleadings, the discovery and disclosure

4

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[1] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." Id. In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment." Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

**V.    Discussion**

The single, dispositive legal issue for resolution in this case is whether plaintiffs' remittance of $50,000, which the IRS received on January 17, 2001, is a "payment" or a "deposit" under federal tax law. If the remittance is a "payment," the claim is barred by the expiration of the applicable statute of limitations. On the other hand, if the remittance is a "deposit," plaintiffs are entitled to a refund of $50,000.

---

[1] By Order dated July 10, 2008, the Court suggested to the parties that they consider agreeing to present the case on cross-motions for summary judgment with the Court deciding any issues of material fact identified by the Court in connection with its review of the motions for summary judgment, subject to the proviso that the Court notify the parties of any such issues of material fact and give the parties an opportunity to supplement the record with documents or testimony with respect to each such issue. The parties agreed to this procedure. However, the procedure was not implemented because the Court concluded there was no genuine issue of material fact to be decided.

A "payment" is a remittance "'in response to an assessment or to discharge all or part of an existing tax liability'" and can accrue interest in favor of the taxpayer. Blom v. United States, 98 A.F.T.R. 2d 2006-7900, 7902 (E.D. Pa. 2006) (quoting Danoff v. United States, 324 F. Supp. 2d 1086, 1097 (C.D. Cal. 2004) (quoting Blatt v. United States, 34 F.3d 252, 254–55 (4th Cir. 1994))). A "payment" is subject to a three year statute of limitations. 26 U.S.C. § 6511(a); Crosby v. United States, 79 A.F.T.R. 2d 97-1901, 1903 (D. Vt. 1995).

In contrast, a "deposit" is a remittance made "when no assessment is then outstanding against the taxpayer" and the funds are held "as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." Rosenman v. United States, 323 U.S. 658, 661 (1945); Rev. Proc. 84-58, 1984-2 C.B. 501 §§ 4, 5 (July 1984). No statute of limitations applies to a "deposit." Crosby, 79 A.F.T.R. 2d at 1903.

If plaintiffs' $50,000 remittance is considered a "payment," they must forfeit the funds because their tax return for 2000 was filed on August 1, 2005—nine months after the statute of limitations expired on October 15, 2004. (Def.'s Mem. Supp. Cross-Mot. 2; Brennan Decl. ¶ 19.) However, if the $50,000 remittance is considered a "deposit," plaintiffs may apply those funds to their subsequent tax liability. The Third Circuit aptly explained that such a situation presents a question of law:

> The factual situation which gives rise to the problem is usually a simple one. The taxpayer learns of possible tax liability and places in the hands of the Collector of Internal Revenue an amount of money deemed by him to be sufficient to stop the running of interest or penalty assessments. It transpires that the amount remitted was more than the tax due. The question then arises as to whether such a remittance is a payment of tax or a mere deposit to avoid the running of interest or assessment of penalties. There are, of course, widely differing circumstances which attend such remittances made by taxpayers. The ultimate issue, however, is one of law and must be viewed as such.

Fortugno v. C.I.R, 353 F.2d 429, 434 (3d Cir. 1965).

Plaintiffs contend that the $50,000 remittance was a "deposit" because plaintiffs so intended—that is, they submitted it to the IRS "as an advance payment toward any tax liability arising in subsequent years so [as] to forestall the IRS imposition [sic] of penalties and interest." (Pls.' Mot. 2.)

In response, defendant argues that plaintiffs intended to make a "payment" and "should not be allowed to recharacterize their payment at a later date to better suit their needs"—namely, to circumvent the statute of limitations and have their remittance credited toward subsequent tax liability. (Def.'s Cross-Mot. 1; Def.'s Mem. Supp. Cross-Mot. 9.) Specifically, defendant contends that plaintiffs intended to make a "payment" because: 1) Mr. Ciccotelli wrote "estimated taxes" on the $50,000 remittance check; 2) Mr. Ciccotelli completed a Payment Voucher for the remittance, which states that it should be "[f]ile[d] only if you are making a payment of estimated tax . . . ;" 3) the remittance check was dated only four days before plaintiffs' fourth-quarter estimated tax payment for the 2000 fiscal year was due; 4) the IRS treated the remittance as a fourth-quarter estimated tax payment; and 5) plaintiffs listed the remittance in the "estimated tax payment" and "overpayment" lines of their 2000 tax return. (Def.'s Mem. Supp. Cross-Mot. 4–7.)

### A.   "Facts and Circumstances" Analysis

In determining whether a remittance made prior to a notice of tax deficiency is a "payment" or a "deposit," the Third Circuit applies a "facts and circumstances" test. <u>Blom v. United States</u>, 97 A.F.T.R. 2d 2006-2777, 2779 (E.D. Pa. 2006) (citing <u>Fortugno v. C.I.R.</u>, 353 F.2d 429 (3d Cir. 1965)). The "facts and circumstances" test "mandates an inquiry into (1) the timing of the remittance; (2) the intent of the taxpayer in making the remittance; and (3) how the

IRS treated the remittance upon receipt of the remittance." Id. (citing Rosenman, 323 U.S. 658, 661–63 (1945)). "The Court must take into account 'the unique facts and circumstances of each case.'" United States v. Tate & Lyle North American Sugars, Inc., 228 F. Supp. 2d. 308, 320–21 (S.D.N.Y. 2002) (quoting Crosby v. United States, 889 F. Supp. 148, 151 (D. Va. 1995)).

In this case, the facts and circumstances surrounding plaintiffs' $50,000 remittance to the IRS demonstrate that the remittance was a "deposit." The Court reaches this conclusion for several reasons, which are explained below.

### 1. Plaintiffs' Intent in Making the $50,000 Remittance

Mr. Ciccotelli testified that he did not intend for the remittance to be an estimated tax payment. (Ciccotelli Dep. 17:1–3.) Rather, he submitted it because he "wanted to avoid interest and penalties," (id. at 9–10), which is a hallmark of a "deposit." See Fortugno, 353 F.2d 429, 434 (3d Cir. 1965) (observing that a "deposit" is designed "to avoid the running of interest or assessment of penalties"); Rosenman, 323 U.S. at 662 (characterizing a remittance that was determined to be a "deposit" as "merely an interim arrangement to cover whatever contingencies the future might define"). Moreover, the $50,000 remittance was distinct from the other payments plaintiffs made in 2000. Specifically, the three estimated tax payments for 2000 (before the $50,000 remittance was submitted on January 17, 2001) were in the amounts of $16,000, $17,000, and $15,000. (Brennan Decl. ¶ 8; Pls.' Mot. 2; Def.'s Mem. Supp. Cross-Mot. 3.) Each of these payments was accompanied by a Payment Voucher. (1040-ES Payment Voucher Forms.) However, the $50,000 remittance was nearly three times as large as plaintiffs' prior estimated tax payments, and it was not submitted with a Payment Voucher. Both the amount of the $50,000 remittance and the fact that it was not accompanied by a Payment Voucher distinguish it from

plaintiffs' three prior estimated tax payments and support plaintiffs' argument that it was a "deposit."

In addition, plaintiffs did not consult an accountant in estimating the taxes they owed in 2000, and there had been no determination of their tax liability for 2000 as of the time of the remittance. (Ciccotelli Dep. 18:21–22.) Indeed, plaintiffs aver that Mr. Ciccotelli "used his accounting background to estimate [plaintiffs'] calendar year 2000 federal income tax liability." (Pls.' Mot. 1.) In writing the $50,000 remittance check, Mr. Ciccotelli testified: "[i]t was, you know, easy to just write a check and in my mind I'm covering all my bases. So I sent a $50,000 check in, and no matter what happens I'm going to be ahead of the game . . . ." (Ciccotelli Dep. 18:3–9.) Such a failure to "consult with a tax attorney or accountant to estimate the taxes owed" or to "seriously th[ink] about the potential tax liability prior to actually writing the check" is evidence that the remittance was intended as a "deposit" rather than a "payment." Blom v. United States, 97 A.F.T.R. 2d 2006-2777, 2779 (E.D. Pa. 2006); see also Risman v. Comm'r, 100 T.C. 191, 198 (1993) (stating that "a disorderly or random remittance (that is made by a taxpayer arbitrarily, without regard to an orderly, apparent, or reasonably possible ultimate tax liability, and that is made prior to any determination by respondent of the taxpayer's tax liability)" and that bears "no good faith relationship to petitioners' actual joint Federal income tax liability . . . will generally be regarded not as a payment of tax but as a mere deposit").

Defendant seeks to controvert this conclusion in four ways. First, defendant points to the fact that Mr. Ciccotelli wrote "estimated tax" on the remittance check, which, according to defendant, suggests that Mr. Ciccotelli was making an "estimated tax" *payment*. (Def.'s Mem. Supp. Cross-Mot. 5.) However, such a notation is inconclusive on the question of whether the

9

funds were for "estimated tax" that would be due in the 2000 tax year (as defendant argues) or for any "estimated tax" that would become due in future years (as plaintiff avers). See Blom, 97 A.F.T.R. 2d at 2779 (finding a notation of "Federal Estate Tax for Helen Walbridge" written on a remittance check to be unpersuasive of intent, stating "I do not think that a memo on one check constitutes a 'designation'").

Second, defendant highlights plaintiffs' completion of a Payment Voucher as evidence of plaintiffs' intent to make a "payment." (Def.'s Mem. Supp. Cross-Mot. 5 (emphasizing that "the only document associated with the $50,00 [sic] payment was a Form 1040-ES payment voucher" and thus reflects plaintiffs' intent to make a "payment"). However, the Court finds Mr. Ciccotelli's testimony that he did not send the Payment Voucher to the IRS (and defendant's failure to produce any evidence that the IRS received this Payment Voucher) more compelling evidence of his intent than his mere completion of the form. (Ciccotelli Dep. 32:15–24, 35:20–21, 36:1–4.) That is, Mr. Ciccotelli's failure to submit the Payment Voucher despite completing it is consistent with an intent to make a "deposit" rather than a "payment."

Third, defendant argues that the way plaintiffs completed their 2000 tax return further illustrates their intent to make a "payment." (Def.'s Mem. Supp. Cross-Mot. 5.) Specifically, on Line 59 of their 2000 tax return—for "2000 estimated tax payments and amount applied from 1999 return"—the return states "$98,000," which is the amount of plaintiffs' three payments in 2000 and the $50,000 remittance. By including the $50,000 remittance in the "2000 estimated tax payments" line, "[t]he taxpayers treated [it] as a payment . . . ." (Id.) In support of this position, defendant cites to Harrigill v. United States, 410 F.3d 786, 791 (5th Cir. 2005) for the proposition that "listing the $50,000 remittance on a tax return as an estimated tax payment

means that the taxpayers made a 'payment.'" (Def.'s Mem. Supp. Cross-Mot. 6.)

However, Ms. Hatfield, who prepared plaintiffs' 2000 tax return, testified that she advised defense counsel that she "probably erred in placing the $50,000 check" in Line 59 "but did not know where else to place a deposit" since "there is no line on the return specifically for that purpose." (Hatfield Aff.) In light of such evidence of "error" or lack of foresight on the part of plaintiffs' tax preparer, the Court finds that the inclusion of the $50,000 remittance on Line 59 of plaintiffs' 2000 tax return is insufficient to demonstrate plaintiffs' intent to make a "payment."

Moreover, defendant's reliance on Harrigill is unavailing because that case is distinguishable from the instant case. Specifically, unlike the instant case, Harrigill involved a taxpayer's remittance with an IRS Form 4868 application for an automatic four-month extension of time for filing, and in Harrigill, there was no assertion by the taxpayer of an intent to "apply the credit from [one tax year] to [the subsequent tax year] to stop penalties from accruing in relation to an IRS challenge of her determinations and representations." Harrigill, 410 F.3d at 787, 791. In the Harrigill opinion, the court emphasized the fact that "the taxpayer . . . had not submitted the remittance in an effort to stop any penalties from accumulating." Id. The Court also notes that Harrigill is a Fifth Circuit case and is not binding on this Court.

Finally, defendant argues that Mr. Ciccotelli's deposition testimony that "the $50,000 . . . 'was just like putting it into a savings account'" and that "'the interest rate was so high at that time that this was the best place to park your money, if you overpaid your taxes'" supports defendant's position that the remittance was a "payment" and not a "deposit." (Reply Br. Supp. United States' Cross-Mot. 2–3 (quoting Ciccotelli Dep. 19:7–8, 17:19–22).) The short answer to this argument is that plaintiffs did not seek interest on the $50,000 from the date it was sent to

11

the IRS to the date they filed their 2000 federal income tax return. Moreover, taking all the facts and circumstances into consideration, those statements are insufficient to cast the remittance as a "payment."

For the foregoing reasons, defendant's four arguments in favor of treating plaintiffs' $50,000 remittance as a "payment" must be rejected. The Court concludes that with respect to the first factor of the "facts and circumstances" test, plaintiffs' intent was to make a "deposit" and not a "payment."

### 2. Timing of the $50,000 Remittance

In analyzing the "facts and circumstances" surrounding the $50,000 remittance, the timing of the remittance is relevant in determining whether it was a "payment" or "deposit." Specifically, courts have examined "when the tax liability is defined" and whether the remittance was made in advance of any assessment of a tax liability (e.g., a return, an audit, a notice of deficiency). See, e.g., Crosby v. United States, 79 A.F.T.R. 2d 97-1901, 1904 (D. Va. 1995) (considering the fact that the taxpayer's "tax liability had not yet been defined when" the remittance was made as "suggest[ing] that the [remittance] was a deposit rather than a payment"); Blom v. United States, 97 A.F.T.R. 2d 2006-2777, 2779 (E.D. Pa. 2006) (observing that the taxpayer had "not seriously thought about the potential tax liability" or the amount of "taxes owed" before making her remittance); Ertman v. United States, 165 F.3d 204, 207 (2d Cir. 1999) (characterizing the "facts and circumstances" inquiry originating from Rosenman as one that considers "the timing of the assessment or definition of the tax liability"); Ewing v. Untied States, 914 F.2d 499, 503 (4th Cir. 1990) (noting that other courts have considered "formal assessment" of the tax as a relevant factor in determining whether a remittance is a "payment").

When considering the timing of a remittance, the Third Circuit has stated that "the weight of authority" is "that there must be an assessment or an acquiescence in the proposed deficiency" for there to be a "payment." Fortugno v. Comm'r, 323 F.2d 429, 435 (3d Cir. 1965); see also United States v. Tate & Lyle N. American Sugars, Inc., 228 F. Supp. 2d 308, 321 (S.D.N.Y. 2002) (stating that a "'taxpayer who makes a remittance before a tax liability has been ascertained . . . is generally presumed to have intended to make a deposit'") (quoting Malachinski v. Comm'r, No. 13501-94, 1999 WL 349342 (U.S. Tax Ct. June 1, 1999) aff'd 268 F.3d 497 (7th Cir. 2001)).

Defendant argues that because the $50,000 remittance was received by the IRS on January 17, 2001, which was close in time to plaintiffs' fourth-quarter estimated tax payment deadline of January 15, 2001, "the facts indicate that the remittance was an estimated tax payment." (Def.'s Mem. Supp. Cross-Mot. 5.) However, the due date of the estimated tax payment does not alter the fact that the remittance was submitted prior to any assessment of plaintiffs' tax liability, such as through a return or notice of deficiency. Indeed, plaintiffs' first three estimated tax payments in 2000, coupled with their employment withholding, overpaid their total tax liability for 2000 by $6,188.

Thus, the Court concludes that the timing of plaintiffs' remittance in relation to the definition of their tax liability weighs in favor of treating the remittance as a "deposit" rather than a "payment."

### 3. IRS's Treatment of the $50,000 Remittance

Also relevant in determining whether plaintiffs made a "payment" or a "deposit" is how the IRS treated the remittance. Blom, 97 A.F.T.R. 2d at 2779. "The Government does not

consider . . . advances of estimated taxes as tax payments. They are, as it were, payments in escrow. They are set aside . . . in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer." Rosenman v. United States, 323 U.S. 658, 662 (1945). Thus, if the IRS "segregates a remittance in a separate account, as opposed to depositing it in a general funds account, it tends to show that the IRS is treating the remittance as a deposit rather than a payment." Crosby v. United States, 79 A.F.T.R. 2d 97-1901, 1904 (D. Va. 1995).

Plaintiffs present an IRS transcript corresponding to their taxpayer identification numbers. (IRS Transcript, Mar. 10, 2006, Ex. 1 to Pls.' Mot.) This transcript shows that the IRS labeled plaintiffs three estimated tax payments in 2000 as "estimated tax declaration[s]" with a code of "430." (Id.) However, the IRS treated the $50,000 remittance differently, labeling it an "estimated tax/federal tax deposit" with a code of "663." (Id.)

In opposition, defendant offers the declaration of Barbara A. Brennan, who is employed as a Payment Posting Team Leader in the Philadelphia Compliance Services, Centralized Insolvency Operations branch of the IRS. (Brennan Decl. ¶ 1.) Ms. Brennan stated that her review of more detailed, internal IRS documents revealed that the "$50,000 payment was applied to [plaintiffs'] tax account for tax year 2000." (Id. at ¶ 4.) According to a type of tax transcript called the "TxModA"—which differs from the transcripts released to taxpayers and shows more detail regarding "payments, assessments, refunds, liens, etc."—the $50,000 remittance was given a "Transaction Code 660." (Id. at ¶¶ 5, 7, 9.) This is the same code that was given to the three estimated tax payments made in 2000, which defendant argues is an indication that the $50,000 remittance was treated similarly to the three payments and was thus itself a "payment." (Def.'s

14

Mem. Supp. Cross-Mot. 7.)

Assuming *arguendo* that defendant's transcript more accurately reflects the IRS's treatment of the $50,000 remittance and that the IRS treated it as a "payment," the Court nonetheless concludes that this is not sufficient to transform the remittance into a "payment" in light of the other facts and circumstances surrounding the transaction as discussed in Part V, *supra*. That is, the totality of the evidence requires a finding that the remittance was a "deposit." Mr. Ciccotelli's unambiguous intent was to avoid "interest and penalties." No tax liability had been assessed in advance of plaintiffs' $50,000 remittance, and there was no effort by plaintiffs to estimate the balance due, if any, on their 2000 federal income tax return. The $50,000 remittance differed significantly in amount from the three estimated tax payments plaintiffs made in 2000—payments that, together with plaintiffs' employment withholding, overpaid their 2000 tax liability by $6,188. Moreover, plaintiffs did not submit a Payment Voucher with the $50,000 remittance.

Such factors counsel in favor of categorizing the remittance as a "deposit" despite the IRS's contrary treatment of the remittance. Indeed, other courts have found that the totality of the facts and circumstances may dictate a determination contrary to the way in which the transaction was handled by the IRS. See, e.g., Blom v. United States, 97 A.F.T.R. 2d 2006-2777 (E.D. Pa. 2006) (finding a remittance to be a "deposit" based on the first two factors of the "facts and circumstances" test despite the IRS's treatment of the remittance as a "payment"); Ewing v. United States, 914 F.2d 499, 503 n.10 (4th Cir. 1990) (finding that the IRS's treatment of the remittance was "not . . . dispositive" because another factor—namely the taxpayers' voluntary

15

remittance in accordance with an agreed-upon tax deficiency—was "more significant").

Thus, the Court concludes that, notwithstanding the way in which the IRS treated the $50,000 remittance, the "facts and circumstances" surrounding the remittance demonstrate that it was a "deposit" and not a "payment." Accordingly, the Court grants plaintiffs' Motion for Summary Judgment and denies defendant's Cross-Motion for Summary Judgment.

## VI.   Conclusion

For the foregoing reasons, the Court grants plaintiffs' Motion for Summary Judgment, denies defendant's Cross-Motion for Summary Judgment, and enters judgment in favor of plaintiffs, Richard Ciccotelli and Maureen Mason, and against defendant, the United States of America, in the amount of $50,000, less any tax due, plus interest from the date plaintiffs' 2000 federal income tax return was filed.

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**

**JAN E. DUBOIS, J.**